IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **CHARLES PHILLIP COWIN** | § | Case No. 10-34132 |
| | § | |
| **Debtor** | § | |

**MOTION OF BAC HOME LOANS SERVICING, LP FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT LITIGATION TO PROCEED IN DISTRICT COURT**

THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

THERE WILL BE A HEARING ON THIS MATTER ON AUGUST 10, 2010 AT 9:00 A.M. IN COURTROOM 600, UNITED STATES COURTHOUSE, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.

TO THE HONORABLE JEFF BOHM, UNITED STATES BANKRUPTCY JUDGE:

BAC Home Loans Servicing, LP (the "Plaintiff"), files this *Motion of BAC Home Loans Servicing, LP for Relief From the Automatic Stay to Permit Litigation to Proceed in District Court* (the "Motion") and would respectfully show this Court as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). Venue is proper in this District pursuant to 28 U.S.C. § 1409.

2. Plaintiff brings this Motion under § 362 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or "FRBP"), and Rule 4001-1 of the Bankruptcy Local Rules (the "BLR").

## BACKGROUND FACTS

3. On August 7, 2009, Plaintiff initiated the case styled *BAC Home Loans Servicing, LP v. Texas Realty Holdings, LLC*, *et al.*, 4:09-CV-2539 pending in the United States District Court for the Southern District of Texas (the "District Court Action").

4. Plaintiff is the servicer for holders of mortgages underlying three properties (the "Properties") at issue in the District Court Action.

5. In the District Court Action, Plaintiff alleges, among other things, that Charles Phillip Cowin (the "Debtor") and other named defendants (together, the "Remaining Defendants") perpetrated a scheme to improperly extinguish senior mortgages held on the Properties. *Plaintiff's First Amended Complaint* (the "Complaint"), which contains a detailed background of the scheme and causes of action asserted against the Remaining Defendants, is attached hereto as Exhibit A.[1]

6. On February 24, 2010, the Debtor filed for bankruptcy protection in this Court. That case was subsequently dismissed on March 31, 2010, for failure of the Debtor to timely file schedules and a statement of financial affairs.

7. On May 19, 2010, the Debtor filed for bankruptcy protection a second time in less than three months, and initiated the above-captioned bankruptcy case (the "Bankruptcy Case").

8. On June 8, 2010, *Debtor's Motion to Extend Automatic Stay Pursuant to 11 U.S.C. § 362(c)(3)(b)* (the "Motion to Extend Stay") was filed. Through the Motion to Extend Stay, the Debtor requested an extension of the automatic stay, which, pursuant to section 362(c)(3)(A), would otherwise expire after thirty days.

9. On June 9, 2010, there was a status conference on the Bankruptcy Case (the "Status

---

[1] For reasons of brevity, BAC has not described at length the details of its dispute with the Defendants. Please see the attached Complaint for more information.

Conference"). At the Status Conference, the Court set the hearing on the Motion to Extend Stay for Friday June 18, 2010. *See* Transcript of Status Conference (June 9, 2010 at 11:37 a.m. to 11:52 a.m.) at p. 10, lines 16-25 (attached hereto as Exhibit B).

10. Despite the Court's setting of the hearing for June 18, 2010, Debtor's counsel set the hearing for June 15, 2010. *See* Notice of Hearing, filed June 10, 2010 [D.I. 20] (the "Notice of Hearing"). The Motion to Extend Stay was subsequently signed by this Court on June 15, 2010 -- three days prior to the hearing date contemplated at the Status Conference. *See Order Granting Debtor's Motion to Extend Automatic Stay Pursuant to 11 U.S.C. § 362(c)(3)(b)* [D.I. 25] (the "Order Extending Stay").

11. Due to Plaintiff's belief the hearing on the Motion to Extend Stay was set for June 18, 2010, as stated by the Court, Plaintiff did not appear to contest the motion on June 15. Plaintiff's failure to attend the hearing or object to the Motion to Extend Stay should not be read as contradictory to, or a waiver of, this Motion.

12. This Motion seeks relief from the automatic stay to proceed against the Debtor in the District Court Action.

## ARGUMENTS AND AUTHORITIES

13. Plaintiff is entitled to relief from the automatic stay to prosecute the District Court Action in the District Court to a final judgment. *See* 11 U.S.C. § 362(d)(1). As explained below, "cause" exists under Bankruptcy Code § 362(d) for this Court to modify the automatic stay for the limited purpose of liquidating these claims in the District Court, and the Debtor will suffer no undue hardship if this Motion is granted.

A. **A bankruptcy court must balance the hardships among the parties when deciding whether to grant stay relief to permit an action to proceed in another tribunal.**

14. Bankruptcy Code § 362(d)(1) states, in part, that a bankruptcy court may grant stay

3

relief under the following circumstances:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

*Id.* Because § 362(d)(1) does not define "cause," a court must examine whether cause exists on a case-by-case basis in light of the facts and circumstances of the particular situation. *See e.g., Reitnauer v. Texas Exotic Feline Found., Inc. (In re Reitnauer),* 152 F.3d 341, 343 n.4 (5th Cir. 1998). The legislative history of § 362 provides that "a desire to permit an action to proceed to completion in another tribunal may provide…cause" to lift the stay. *Mooney v. Gill*, 310 B.R. 543, 546 (N.D. Tex. 2002) (quoting *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996)); *see also* H.R. REP. NO. 95-595, at 341 (1977), 1978 U.S.C.C.A.N. 5963, 6297-98, S. REP. NO. 95-989, at 50 (1978), 1978 U.S.C.C.A.N. 5787, 5836.

15.   To determine whether "cause" exists under these circumstances, the bankruptcy court must consider three essential factors: (1) "whether lifting the stay will result in any great prejudice to the debtor or the bankruptcy estate," (2) "whether any hardship to a nondebtor of continuation of the stay outweighs any hardship to debtor," and (3) "whether the creditor has a probability of prevailing on the merits of the case." *In re Adebo*, 2007 Bankr. LEXIS 3758 (Bankr. S.D. Tex. Nov. 1, 2007); *see also In re Tonthat*, 2009 Bankr. LEXIS 2165 (Bankr. S.D. Tex. Aug. 7, 2009); *In re CDX Gas, LLC*, 2009 Bankr. LEXIS 215 (Bankr. S.D. Tex. Feb. 5, 2009).[2]

---

[2] This test is substantially similar to the test articulated by the Bankruptcy Appellate Panel of the Eighth Circuit, a popular test used by many courts. *See Loudon v. Amogio Foods, Inc. (In re Loudon)*, 284 B.R. 106, 108 (B.A.P. 8th Cir. 2002); *Blan v. Nacogdoches Cty. Hosp. (In re Blan)*, 237 B.R. 737, 739 (B.A.P. 8th Cir. 1999). Under the Eighth Circuit's test, a court must consider the following five factors: (1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact on other creditors. *Loudon*, 284 B.R. at 108.

**B.     The balance of hardships between Plaintiff and the Debtor favors permitting the District Court Action to proceed in the District Court.**

16.     Each of the three factors favor granting Plaintiff relief from stay to allow the District Court Action to proceed in the District Court. Plaintiff examines each such factor in turn.

**(i)     Lifting of the Stay Will Not Result in Great Prejudice to the Debtor or Bankruptcy Estate.**

17.     The first factor suggests the automatic stay should be lifted. If this Court grants stay relief, Plaintiff will simply continue prosecution of the District Court Action against the Debtor. Plaintiff is only seeking stay relief to determine the Debtor's liability in the District Court Action and the potential damages he owes Plaintiff. It is not trying to foreclose or otherwise move against the Debtor's property. If Plaintiff prevails in the District Court Action, then it will return to this Court holding claims in a liquidated amount and participate in any distribution from the Debtor's assets to the same extent as other general unsecured creditors. On the other hand, if the Debtor wins the case, then Plaintiff's claims will be zero and it will have no right to any distribution at all. In either case, lifting the stay will not affect the Debtor's other creditors in any significant way. The forum of the trial (District Court vs. Bankruptcy Court) has no impact on the other creditors or the Debtor's estate.  For these reasons, the Court should conclude that the first factor favors lifting the automatic stay and grant the Motion.

**(ii)     Hardship to Plaintiff Outweighs Hardship to the Debtor.**

18.     As mentioned above, there will be very little hardship on the Debtor or the Debtor's estate, because Plaintiff is merely attempting to liquidate its claim against the Debtor which will be asserted in this Bankruptcy Case.  A trial on the matter will be held either way.

19.     If the Court does not lift the automatic stay, Plaintiff will be prejudiced in several ways: (1) Plaintiff will have to waste substantial resources prosecuting separate but similar actions;

5

(2) Plaintiff (and the Debtor) will be at risk of inconsistent judgments; and (3) Plaintiff will be required to file a motion for mandatory withdrawal of the reference, which will ultimately require the Court to allow the District Court Action to proceed in any event.

20. The District Court Action will continue to proceed against the Remaining Defendants. Plaintiff will be forced to waste substantial resources prosecuting separate actions: one against the Debtor as a claims objection proceeding in this Court and one against the remaining Defendants in the District Court Action. Issues such as discovery and joint defenses become more cumbersome when the claims against the Remaining Defendants are not heard at the same time in the same forum. Such duplication of efforts is unnecessary and a burden to both the Debtor's bankruptcy estate and Plaintiff. Courts have often ruled that lifting the stay is appropriate in order to avoid the wasteful duplication associated with litigating the same issues in multiple proceedings before separate courts. *See Loudon v. Amogio Foods, Inc. (In re Loudon)*, 284 B.R. 106, 108 (B.A.P. 8th Cir. 2002) (affirming the bankruptcy court's holding that the stay should lift to permit a state court to determine liability and damages in order to avoid the costs associated with a trial in the bankruptcy court).

21. The possibility of having two separate trials is particularly troublesome in this case, where Plaintiff has alleged a complex scheme orchestrated by the Debtor in conjunction with each of the other Remaining Defendants. *See*, *e.g.*, Complaint at ¶ 17. In the face of such allegations, the case against the Debtor cannot be easily divorced and tried separately from the case against the Remaining Defendants. If Plaintiff must proceed against the Remaining Defendants in District Court and against the Debtor in this Court (most likely as one or more contested matters in connection with a claims objection), then Plaintiff will have to present essentially the same evidence, the same witnesses and the same arguments in two separate proceedings. Courts have

long justified lifting the automatic stay in circumstances like this so a plaintiff can mount a single case against all co-defendants in the same proceeding and thereby avoid the unnecessary duplication of effort that would result if the cases were tried separately. *See, e.g., Blan v. Nacogdoches Cty. Hosp. (In re Blan)*, 237 B.R. 737, 739-40 (B.A.P. 8th Cir. 1999) (affirming the bankruptcy court's decision to lift the stay because of, in part, the "duplication that would result from trying the co-defendants separately").

22. Second, if this Court does not lift the automatic stay to permit the District Court Action to proceed in District Court, then the parties all face the risk of inconsistent judgments and obligations. In ruling on a claims objection, this Court conceivably could find no liability, while the District Court could reach a contrary result in the District Court Action. Such conflicting judgments would work considerable unfairness on all the parties involved—especially because Plaintiff's claims arise out of the collective actions of the Debtor and the Remaining Defendants. Trying a single case against all the parties in the same jurisdiction would avoid such an outcome. The equities and balancing of hardships strongly favor lifting the automatic stay.

23. Third, lifting the stay will limit hardships on both parties by avoiding unnecessary procedural wrangling over mandatory withdrawal of the reference under 28 U.S.C. § 157(d), which will occur if this Court does not lift the stay. Mandatory withdrawal of the reference is triggered whenever bankruptcy matters require the consideration of non-bankruptcy federal law affecting interstate commerce. *See* 28 U.S.C. § 157(d). The purpose of mandatory withdrawal is to allow for the resolution of significant federal questions in the district courts, which have both the jurisdiction to decide them and more frequently interpret federal laws of general applicability. *See Franklin Sav. Ass'n v. Office of Thrift Supervision*, 150 B.R. 976, 981-82 (D. Kan. 1993); *Sullivan v. Hiser (In re Saint Mary Hosp.)*, 115 B.R. 495, 497 (E.D. Pa. 1990); *In re Johns-Manville Corp.*, 63 B.R.

600, 602 (S.D.N.Y. 1986). Courts have generally held that mandatory withdrawal of the reference is warranted where "substantial and material consideration" of federal statutes other than the Bankruptcy Code is "necessary" to resolve a case or proceeding. *E.g., Environmental Protection Agency v. National Gypsum Co. (In re National Gypsum Co.)*, 134 B.R. 188, 192 (N.D. Tex. 1991); *see also In re White Motor Corp.*, 42 B.R. 693, 703 (N.D. Ohio 1984) (articulating "substantial and material consideration" test).

24. Mandatory withdrawal ordinarily demands more than a mere "straightforward application" of the non-bankruptcy federal law to particular facts. *National Gypsum*, 134 B.R. at 192. On the contrary, interpreting the federal statute must be necessary to the case's resolution. *Id.* Withdrawal is thus mandatory "when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law." *Rodriguez v. Countrywide Home Loans, Inc.*, 421 B.R. 341, 348 (S.D. Tex. 2009).

25. In this case, withdrawal of the reference is mandatory under 28 U.S.C. § 157(d) because any court adjudicating Plaintiff's claims must conduct a "substantial and material consideration" of open and unresolved issues related to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), codified at 18 U.S.C. §§ 1961–1968. Specifically, RICO is a federal non-bankruptcy statute affecting interstate commerce and therefore implicates the mandatory withdrawal provisions of § 157(d); indeed one of the elements of a RICO claim is proving the predicate and RICO acts at issue affected interstate commerce. *See* 18 U.S.C. § 1962(b).

26. Adjudicating Plaintiff's RICO claims will involve more than a "straightforward application" of RICO to the facts alleged in the District Court Action. *National Gypsum*, 134 B.R. at 192. To the contrary, Plaintiff's claims will require a novel analysis and application of federal non-bankruptcy law in at least two ways. The first concerns the analysis and application of RICO's

8

"enterprise" requirement—specifically its provision for an "association in fact" enterprise. It is Plaintiff's contention that a recent United States Supreme Court decision, *Boyle v. United States*, ___ U.S. ___, 129 S. Ct. 2237 (2009), abrogated the Fifth Circuit's test, or portions of it, regarding the elements required to prove an "association in fact" enterprise under RICO. *Compare Boyle*, 129 S. Ct. at 2244–45 (outlining showing needed to establish holding a RICO "enterprise," and holding that RICO does not require a showing of structural features or hierarchy), *with Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) (holding association-in-fact enterprise requires showing of hierarchical decision making). To date, the Fifth Circuit has not applied *Boyle*, or considered the extent to which *Boyle* abrogated prior Fifth Circuit law. The District Court will therefore be applying new federal law to the facts of the District Court Action. This suffices to warrant mandatory withdrawal of the reference.

27.   Plaintiff's RICO claim also raises novel questions as to whether a "scheme to defraud" is present. To satisfy the "racketeering activity" element, Plaintiff has alleged the Debtor and the Remaining Defendants violated 18 U.S.C. § 1341 (mail fraud), and 18 U.S.C. § 1343 (wire fraud). *See* 18 U.S.C. § 1961(1). Proving a violation of either statute requires proof of a "scheme to defraud." *United States v. Ford*, 558 F.3d 371, 375 (5th Cir. 2009) (wire fraud); *United States v. Arledge*, 553 F.3d 881, 890 (5th Cir. 2008) (mail fraud). Proving a "scheme to defraud" requires a showing that the Debtor and the Remaining Defendants engaged in "fraudulent activity." *United States v. Stephens*, 571 F.3d 401, 404 (5th Cir. 2009). This showing will require the District Court to interpret a federal statute that is necessary to the case's resolution, and therefore requires withdrawal of the reference. *National Gypsum*, 134 B.R. at 192. Indeed, other district courts have not hesitated to withdraw the reference when, as here, the underlying case requires interpretation and application of a federal non-bankruptcy statute. *See, e.g., Boricua Motors Corp. v. Tamachi,*

9

*Inc.*, 76 B.R. 891, 892-93 (D.P.R. 1987) (withdrawing the reference because the defendant's defenses and counterclaims to the plaintiff/debtor's lawsuit turned on whether the plaintiff/debtor had engaged in "unlawful price discrimination" prohibited by the Sherman Act); *Michigan Milk Producers Ass'n v. Hunter*, 46 B.R. 214, 216 (N.D. Ohio) (withdrawing the reference of an adversary proceeding to determine a secured creditor's rights in estate property because the Chapter 7 trustee had alleged that the liens were based on an agreement that violated the Sherman Act). Consequently, the reference to this Court to adjudicate Plaintiff's RICO claims set forth in the District Court Action will have to be withdrawn. That this Court cannot adjudicate Plaintiff's RICO claims constitutes clear cause to lift the automatic stay. *Cf. In re Ingle*, 259 B.R. 856, 861 (Bankr. E.D. Tex. 2001) (lifting the automatic stay because the bankruptcy court was prohibited from adjudicating the plaintiffs' personal injury and wrongful death claims). Moreover, because the reference to consider Plaintiff's claims will be withdrawn from this Court, lifting the stay now will conserve the Court's and the parties' resources by eliminating the need for a subsequent motion for mandatory withdrawal of the reference.

### (iii) Plaintiff's Chance of Success on the Merits.

28. The last prong the Court should consider is the probability of Plaintiff's success on the merits in the underlying litigation. *Blan*, 237 B.R. at 739-40. Even a slight probability of success on the merits may suffice to support lifting the stay under appropriate circumstances. *In re SCO Group, Inc.,* 395 B.R. 852, 859 (Bankr. D. Del. 2007). For the reasons shown in its well-documented complaint, Plaintiff has strong claims and a good chance of winning if permitted to pursue its claims in the District Court. In fact, the magistrate judge currently presiding over the District Court Action recently concluded Plaintiff had made a substantial showing of a likelihood of success on the merits of Plaintiff's fraudulent transfer claim, and therefore recommended Plaintiff

be granted preliminary injunctive relief against one of the Debtor's co-defendants.[3]

## CONCLUSION

29. In conclusion, Plaintiff has demonstrated that "cause" exists for this Court to lift the automatic stay to permit the District Court Action to proceed in the District Court to a final judgment. 11 U.S.C. § 362(d)(1). The balance of harms between the Debtor and Plaintiff tips convincingly in Plaintiff's favor. This Court should therefore lift the automatic stay to permit Plaintiff to proceed with the District Court Action in the District Court so that it can liquidate the claims against the Debtor in that forum.

## NO PRIOR REQUEST

30. No prior request for the specific relief sought in this Motion has been made to this or any other court in connection with this Bankruptcy Case.

WHEREFORE PREMISES CONSIDERED BAC HOME LOANS SERVICING, LP requests that this Court grant it relief from the automatic stay under Bankruptcy Code § 362 to permit it to proceed with the District Court Action in the District Court, and 2) grant Plaintiff all other relief to which it may be entitled at law or in equity.

---

[3] *BAC Home Loans Servicing, LP v. Texas Realty Holdings, LLC et al.*, No. 4:09-cv-2539, D.I. 120 (S.D. Tex. July 6, 2010) (order recommending district court enter preliminary injunction against one defendant who participated in scheme with the Debtor's assistance), attached as EXHIBIT C.

11

Dated: July 19, 2010.

                        Respectfully submitted,

                        **LOCKE LORD BISSELL & LIDDELL LLP**

                        /s/ *W. Steven Bryant*
                        W. Steven Bryant
                        Texas State Bar No. 24027413
                        Federal Bar No. 32913
                        600 Travis Street, Suite 3400
                        Houston, Texas  77002
                        Phone:  (713) 226-1200
                        Fax:  (713) 223-3717

                        ATTORNEYS FOR BAC HOME LOANS SERVICING, LP

## CERTIFICATE OF CONFERENCE

In accordance with Local Bankruptcy Rule 4001-1, I hereby certify that, on July 15, 2010 and July 16, 2010 I attempted to confer by telephone with Mr. Richard Fuquay, attorney for the Debtor, regarding the relief requested in the **Motion of BAC Home Loans Servicing, LP for Relief From the Automatic Stay to Permit Litigation to Proceed in District Court**. On each occasion, I left voice mail messages with Mr. Fuquay requesting that he return my call to discuss this Motion. Mr. Fuquay did not return either call. On July 19, 2010, I sent Mr. Fuquay a follow-up e-mail again asking him to contact me and informing him that I would file this Motion by 3:00 (CDT) with the Debtor as opposed if I did not hear from him before that time. Mr. Fuquay did not return my e-mail. I therefore conclude that the Debtor opposes the relief sought in the Motion.

      /s/ W. Steven Bryant___
      W. STEVEN BRYANT


## CERTIFICATE OF SERVICE

I hereby certify that, on July 19, 2010, a true and correct copy of the foregoing **Motion of BAC Home Loans Servicing, LP for Relief From the Automatic Stay to Permit Litigation to Proceed in District Court** was served in compliance with the Bankruptcy Local Rules, upon all the parties in interest listed on the attached Master Service List either by ECF and/or by first class United States mail, postage prepaid.

      /s/ W. Steven Bryant
      W. STEVEN BRYANT